# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ALLEN MARION,

      Petitioner,

v.

JEFFREY WOODS,

      Respondent,

_____/

Civil No. 2:12-CV-13127
HONORABLE VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER GRANTING THE
## PETITION FOR WRIT OF HABEAS CORPUS

Allen Marion, ("Petitioner"), confined at the Chippewa Correctional Facility in Kincheloe, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his convictions for second degree murder, Mich. Comp. Laws § 750.317; felony firearm, Mich. Comp. Laws § 750.227b; and possession of a firearm by a felon, Mich. Comp. Laws § 750.224f. [1]

The Court **GRANTS** the petition for writ of habeas corpus; it finds that Petitioner was denied the effective assistance of counsel based on trial counsel's failure to investigate and present an alibi defense.

---

[1]  When Petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Brooks Correctional Facility, but is now incarcerated at the Chippewa Correctional Facility.  The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254.  The Court substitutes Warden Jeffrey Woods in the caption.

# I.  Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court.

Joseph Day was shot in Detroit, Michigan, on March 1, 2006 at approximately 5:40 p.m. (Tr. 6/30/09, pp. 12-15, 20-22).  Although there were ten to fifteen people standing near the victim, and in spite of the fact that police canvassed the neighborhood to find eyewitnesses, they were unable to learn the identity of the assailant, how the assailant came to be there, or anything else helpful to their investigation.  None of the persons the police spoke with acknowledged knowing the shooting victim or where he lived. (*Id.,* pp. 17, 28-29).  The officers indicated in their report that the suspected shooter was "unknown." (*Id.,* p. 22).

Donald "Ricardo" Sims was the only witness at trial to positively identify Petitioner as the shooter.  Sims was arrested on federal drug charges on May 23, 2006.  On December 8, 2006, nine months after the shooting and almost seven months after his arrest on the federal drug charges, Ricardo Sims gave a statement to the officer in charge of this case, Officer Zwicker.  Sims for the first time identified Petitioner as one of the people who shot Mr. Day. (Tr. 6/30/09, pp. 137-138, 166-67).  At this meeting with Zwicker, Ricardo Sims identified Petitioner's photograph from a photo array. (*Id.,* pp. 138-39).  Ricardo Sims told Zwicker that Phillip Yeager and Carnell Sims, Ricardo's brother, could confirm his story. (*Id.,* pp. 179, 182).  Ricardo Sims acknowledged that but for his arrest, he probably never would have given the police information about Day's shooting. (*Id.,* p. 188).

2

Ricardo Sims testified that at the time of his December 8, 2006 statement, he had no formal agreement with the police and was not yet cooperating with them. (*Id.,* p. 138). On cross-examination, Ricardo Sims acknowledged that he spoke with Zwicker as part of a debriefing about his past that was part of his Rule 11 plea agreement in federal court. Ricardo's plea agreement included a term that his truthful cooperation in other criminal investigations would be taken into account in the final determination of his sentence by the federal judge. (*Id.,* pp. 139-140, 176, 178).  He pled guilty to a conspiracy that lasted from 1998 to 2004 to sell large quantities of marijuana in the Detroit area. (*Id.,* p. 146). Ricardo acknowledged that his current sentence of 84 months could be reduced based on his cooperation in Petitioner's murder case. (*Id.,* pp. 140, 180).

Phillip Yeager testified that he witnessed the shooting of  Day of March 1, 2006. (*Id.,* pp. 42, 46-47, 59-64, 78).  He said that when Day was shot he was neither at his home down the street, as a police officer who responded to the scene recalled him saying, nor was he standing anywhere near Day, as Ricardo claimed. Instead, Yeager says he was three houses away from the shooting, at the corner of Manning and Pelkey.  Yeager testified he recalled seeing Ricardo near the area where Day was shot beforehand, but Yeager did not go to the scene until after Day was shot.(*Id.,* pp. 38-40, 44, 57). Yeager could not identify the shooter or shooters. (*Id.,* pp. 43, 46, 52).

However, Yeager testified that he did tell Zwicker that he did not see the shooting.

Carnell Sims denied seeing the shooting and denied knowing who shot Day. Carnell testified that he was a little ways down the street when the shooting occurred and

3

did not see it.  Carnell Sims denied seeing Petitioner before, and testified that he did not

know if Petitioner was present at  Day's shooting. (*Id.,* pp. 104-05).  Carnell also denied

knowing whether Day and/or Ricardo were drug dealers. (*Id.,* pp. 97-98).

Officer Zwicker testified that he spoke with Carnell Sims and Yeager at the home

of Sim's grandmother, around January 8, 2008.  Officer Zwicker testified that Ricardo

Sims may have been walking around inside the home while he spoke with Carnell and

Yeager.  (Tr. 7/1/09, pp. 26-28, 44).  Officer Zwicker testified that the answers he wrote

on Carnell Sim's statement came from Carnell and that Carnell signed the statement.

Zwicker testified that the same was true of Yeager, though Yeager did not have much to

say (*Id*. pp. 27-28).  Zwicker testified that Carnell identified Petitioner as the shooter from

a photo array he showed him during the questioning. (*Id*., pp. 31-32)

Petitioner's attorney filed a Notice of Alibi prior to trial, indicating that he planned

to call Charles Lewis and a person named Arnell as alibi witnesses at trial. [2]  No alibi

defense was presented.

Petitioner filed a direct appeal with the Michigan Court of Appeals.  Although

Petitioner raised several claims both in the brief filed by appellate counsel and in a

Supplemental *pro se* Standard 4 brief [3] that Petitioner filed on his own behalf, including

several ineffective assistance of trial counsel claims, there was no claim raised that trial

---

[2]  Notice of Alibi attached to Original Petition as Exhibit B and to Supplemental Petition as Exhibit BB.

[3]  Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

counsel was ineffective for failing to investigate an alibi defense or call alibi witnesses.

After Petitioner's appellate briefs had been submitted but before the Michigan Court of Appeals issued a decision, Petitioner's appellate counsel filed a motion to remand to the trial court for an evidentiary hearing based on newly discovered evidence that would bolster the alibi defense that Petitioner's counsel intended to present at trial. [4]

Attached to the motion to remand was an affidavit from Charles A. Lewis, Jr., dated December 14, 2009. Lewis stated in his affidavit that he knew Petitioner from the music business and as a friend. Lewis stated that on March 1, 2006, Petitioner picked him up at about 4:00 p.m. and the two drove to a jewelry store in Hamtramck, Michigan, arriving between 4:45 p.m. and 5:00 p.m. Lewis stated in his affidavit that Petitioner looked at some rings, before making a down payment on a ring and receiving a receipt from the jewelry store owner. Lewis stated that the two men were at the jewelry store for over an hour before leaving after 6:00 p.m. Petitioner and Lewis drove to Rochelle Moore's house on Cheyenne Street, arriving between 6:45 p.m. and 7:00 p.m. Lewis left Petitioner and Moore at about 7:45 p.m. Lewis claimed that Petitioner was with him continuously between 4:00 p.m. and 7:45 p.m. on March 1, 2006. Lewis told this information to Petitioner's lawyer prior to trial. [5]

Rochelle Moore signed an affidavit stating that during the fall of 2009, her home

---

[4]  Motion to Remand and Brief in Support part of this Court's Dkt. # 20-17.

[5]  Mr. Lewis' affidavit attached as Appendix B to the Motion to Remand.

5

was broken into and her engagement ring was stolen.  While searching for receipts that would support her insurance claims, Moore discovered a receipt for the engagement ring that Petitioner bought her.   The receipt was from Mirage Jewelry Store, listed Petitioner's name, and was dated March 1, 2006. [6]

Appellate counsel attached a receipt from Mirage Jewelry dated March 1, 2006, with Petitioner's name on it to the motion to remand. [7]  Also attached to the motion to remand was an affidavit from Zaher Murray, the owner of Mirage Jewelry.  Murray was shown a copy of the receipt from his store and a photograph of a woman (Moore) wearing the diamond ring that was purchased from the store.  Murray acknowledged that the receipt from Mirage Jewelry was his and described a diamond ring that was consistent with the ring that the woman in the photograph was wearing and was also consistent with the rings that Murray sold at the time and continues to sell.  Murray recognized Petitioner as one of his customers from a photograph. [8]

Linda Borus, Chief Investigator with the State Appellate Defender Office, indicated that on July 8, 2010, she went to the Mirage Jewelry Store with a copy of the receipt that indicated Petitioner purchased a diamond ring on March 1, 2006.  Murray identified the writing on the receipt as his and verified the receipt coming from his store.  Murray told Ms. Borus that his store did not put receipt information on its computer and

---

[6]  Ms. Moore's affidavit attached as Appendix C to the Motion to Remand.

[7]  Receipt attached as Appendix D to the Motion to Remand.

[8]  Mr. Murray's affidavit attached as Appendix E to the Motion to Remand.

did not keep copies of paper receipts for more than six months. Thus, the original store copy was not available. [9]

Significantly, appellate counsel attached an affidavit from Petitioner's trial counsel, Steven Scharg, to the motion to remand. Mr. Scharg acknowledged that he submitted an alibi witness list on June 4, 2009, which included the names Charles Lewis and a person identified only as Arnell. Scharg acknowledged that these individuals, whom Petitioner had provided the names of, could have provided Petitioner with an alibi. Scharg indicated that none of these witnesses, including Petitioner, could have corroborated where they believed Petitioner to be at the time of the incident. Scharg indicated that he was now aware of the Mirage Jewelry Store receipt discovered by Rochelle Moore. Scharg stated that this receipt provided corroboration for Petitioner's alibi. Scharg indicated that had he been able to verify the authenticity of the receipt, he would have run "a now very credible alibi defense" on Petitioner's behalf. [10]

The Michigan Court of Appeals denied Petitioner's motion to remand, based on Petitioner's "failure to persuade the Court of the necessity of a remand at this time." *People v. Marion*, No. 293440 (Mich. App. Nov. 30, 2010). [11]

Petitioner's conviction was affirmed on appeal. *People v. Marion*, No. 293440

---

[9] Ms. Borus' affidavit attached as Appendix F to the Motion to Remand.

[10] Mr. Scharg's affidavit attached as Appendix A to the Motion to Remand.

[11] Petitioner filed a separate *pro se* motion to remand unrelated to the alibi witness claim, which was also denied in this order.

(Mich. App. Jan. 11, 2011); *lv. den.* 489 Mich. 991 (2011).

Petitioner filed a petition for writ of habeas corpus in 2012.  The Court granted Petitioner's motion to stay the proceedings and hold the petition in abeyance so that he could exhaust additional claims with the state courts.  The Court  administratively closed the case. *Marion v. Berghuis,* No. 2:12-CV-13127; 2012 WL 3150857 (E.D. Mich. August 2, 2012).

Petitioner filed a post-conviction motion for relief from judgment.  As part of his motion for relief from judgment, Petitioner raised a claim that trial counsel was ineffective for failing to run an alibi defense.  Petitioner attached copies of affidavits from Lewis and Murray, as well as the receipt from the store. [12]  The trial court denied the motion for relief from judgment. *People v. Marion,* No. 09-003275-01 (Wayne County Circuit Court, January 22, 2013).  The trial judge specifically denied Petitioner's ineffective assistance of trial counsel claim pursuant to M.C.R. 6.508 (D)(2), on the ground that Petitioner raised this claim on his direct appeal. *Id.,* * 3.  The Michigan appellate courts denied Petitioner leave to appeal. *People v. Marion,* No. 317388 (Mich.Ct.App. November 5, 2013); *lv. den.* 496 Mich. 858 (2014).

The Court reopened the petition  on August 27, 2014.  Petitioner subsequently filed a petition for writ of habeas corpus that is essentially identical to his original habeas petition.  The original petition asserts: (1) the prosecutor committed fraud upon the court

---

[12] *See* Motion for Relief From Judgment [this Court's Dkt. # 20-12].

8

by failing to disclose benefits offered in exchange for witness testimony, by introducing false ballistic evidence, and by presenting false testimony; (2) Petitioner's trial counsel was ineffective for failing to impeach Ricardo Sims and for failing to file a motion for a directed verdict; (3) the prosecutor engaged in misconduct by providing consideration to a jailhouse informant; and (4) trial counsel was ineffective for: (a) failing to investigate alibi witnesses, and (b) failing to prepare a defense.  In his supplemental petition, filed September 29, 2014, Petitioner raises the same claims but also raises claims that appellate counsel was ineffective for failing to raise several claims in his direct appeal, including a claim that trial counsel was ineffective for failing to investigate or call alibi witnesses.

## II.  Discussion

The Court grants Petitioner a writ of habeas corpus; trial counsel's failure to present known alibi witnesses or to investigate potential corroboration of the alibi denied Petitioner the effective assistance of trial counsel.

### A.  The standard of review.

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

9

States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

However, when a state court fails to adjudicate a habeas petitioner's claim on the merits, federal habeas review is not subject to the deferential standard contained in § 2254(d) and a federal court is required to review that claim *de novo. See Cone v. Bell,* 556 U.S. 449, 472 (2009).

As a threshold matter, this Court must determine whether Petitioner's ineffective assistance of trial counsel claim was ever "adjudicated on the merits" for purposes of the AEDPA deferential standard of review.

Petitioner initially raised the alibi witnesses issue in his motion to remand filed with the Michigan Court of Appeals on his direct appeal. The Michigan Court of

10

Appeals denied the motion to remand.  Petitioner raised the same claim in his subsequent application for leave to appeal to the Michigan Supreme Court.

The denial of a habeas petitioner's motion to remand by the Michigan Court of Appeals is typically considered an adjudication on the merits for purposes of the AEDPA deferential standard of review. *See Nali v. Phillips,* 681 F. 3d 837, 852 (6th Cir. 2012). Petitioner, however, did not present his claim in his motion to remand as an ineffective assistance of counsel claim, but as a newly discovered evidence claim.  It is unclear that the Michigan Court of Appeals adjudicated any ineffective assistance claim on the merits when it denied Petitioner's motion for remand.

Petitioner raised his ineffective assistance of trial counsel claim on his post-conviction motion.  The judge denied the claim pursuant to MCR 6.508(D)(2), on the ground that Petitioner already raised an ineffective assistance of trial counsel claim on direct appeal.  M.C.R. 6.508(D)(2) is a *res judicata* rule that precludes a court in Michigan from granting post-conviction relief on a claim that was already decided adversely against a criminal defendant on his or her direct appeal.  The invocation of this rule by the judge to deny Petitioner's claim appears erroneous; Petitioner never raised an ineffective assistance of trial counsel claim on his direct appeal regarding the failure to call alibi witnesses.  The erroneous invocation of M.C.R. 6.508(D)(2) to deny a habeas petitioner's claim is not considered an adjudication on the merits; the application of the AEDPA's deferential standard of review does not apply and the claim is reviewed *de novo* by a federal habeas court. *See McKenzie v. Smith,* 326 F. 3d 721, 726 (6th Cir.

11

2003).

This Court notes that on Petitioner's post-conviction review, the state trial judge rejected Petitioner's related newly discovered evidence and ineffective assistance of appellate counsel claims on the merits. *People v. Marion,* No. 09-003275-01, Slip. Op. at * 3-4.  Both of these claims were arguably related to Petitioner's ineffective assistance of trial counsel claim, particularly Petitioner's claim that appellate counsel was ineffective for failing to raise his alibi witness claim as an ineffective assistance of trial counsel claim on direct appeal. [13]

"If the state court addresses the petitioner's federal claim in the course of resolving a different issue, the federal claim is deemed to have been adjudicated on the merits and entitled to § 2254(d)(1) deference." See Federal Habeas Manual § 3:14.  In *Hodge v. Haeberlin*, 579 F.3d 627, 643 (6th Cir. 2009), the Sixth Circuit held when a state court declines to review a claim because it (or perhaps another state court) had already resolved on direct review a related issue necessary to resolving that claim, the AEDPA's deferential standard of review applies, even though "out of caution" the Sixth Circuit also reviews the issue *de novo. Id.*  Petitioner's claim that counsel was ineffective for failing to investigate or call alibi witnesses is related to the newly discovered evidence claim that he raised in his motion to remand on direct appeal as well as the

---

[13]   It is somewhat inconceivable how the trial judge could reject Petitioner's ineffective assistance of trial counsel claim on the ground that Petitioner already raised the claim on his direct appeal, when Petitioner also included a claim in his post-conviction motion that appellate counsel was ineffective for failing to raise this claim on Petitioner's appeal of right.

newly discovered evidence and ineffective assistance of appellate counsel claims that he raised in his post-conviction motion. Arguably, the rejection of these related claims by the Michigan Court of Appeals on direct review and/or the state trial judge on post-conviction review constitutes an adjudication of Petitioner's ineffective assistance of trial counsel claim on the merits, although in the absence of an explicit adjudication of Petitioner's ineffective assistance of trial counsel claim by any Michigan court, *de novo* review of the claim would appear to be the more valid approach.

It is unnecessary to determine which standard of review applies. Assuming that Petitioner's ineffective assistance of counsel claim was adjudicated on the merits by the Michigan Court of Appeals when it rejected his motion for remand on direct review or by the trial judge on post-conviction review when he denied Petitioner's related newly discovered evidence and ineffective assistance of appellate counsel claims, the rejection of Petitioner's ineffective assistance of trial counsel claim was contrary to, or an unreasonable application of, clearly established law and an unreasonable determination of the facts.

## B. Discussion

To show that he was denied the effective assistance of counsel by federal constitutional standards, defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the

13

defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his or her defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

Lewis signed an affidavit which was presented to the state courts both on direct and post-conviction review.  Lewis indicated that Petitioner was with him from 4:00 p.m. to 7:45 p.m. on March 1, 2006.  Lewis specifically stated that Petitioner picked him up at about 4:00 p.m. and the two men drove to a jewelry store in Hamtramck, Michigan, arriving between 4:45 p.m. and 5:00 p.m.  Lewis also stated that Petitioner made a down payment on a ring and received a receipt from the jewelry store owner.  Lewis said the two of them were at the jewelry store for over an hour before leaving after 6:00 p.m. Lewis and Petitioner drove to Moore's house and Mr. Lewis remained there until 7:45 p.m.

The shooting occurred at 5:40 p.m.  If Mr. Lewis' proposed testimony is believed, it would provide an air-tight alibi for Petitioner and absolve him of the crime. Petitioner's counsel was aware of Lewis' proposed testimony and filed an alibi notice listing him as an alibi witness.  Petitioner's counsel never called Lewis or anyone else to

14

alibi Petitioner.

A defense counsel's performance may be deemed deficient for failing to investigate and present possible alibi witnesses. *See e.g. Clinkscale v. Carter,* 375 F.3d 430, 443 (6th Cir. 2004); *Blackburn v. Foltz,* 828 F.2d 1177, 1183 (6th Cir. 1987). Trial counsel admitted his awareness that Lewis and perhaps others could provide an alibi for Petitioner, yet he failed to call them at trial.

Counsel's rationale for failing to call alibi witnesses is untenable. Counsel claimed in his affidavit that he did not call these witnesses because he had nothing to corroborate the alibi. But, even if Lewis' testimony alone would not have been conclusive, his testimony would have been "quite useful" in establishing an alibi for Petitioner. Counsel's failure to call him to testify was ineffective. *See Matthews v. Abramajtys,* 319 F.3d 780, 789 (6th Cir. 2003).

Compounding counsel's ineffectiveness is that he did nothing to investigate or discover evidence to corroborate Petitioner's alibi. Counsel never spoke with the owner of the jewelry store, nor did he attempt to locate the receipt from the jewelry store which established that Petitioner was at the store on the day of Day's murder and purchased a ring for his fiancee′. The receipt and Murray's testimony verifying the authenticity of the receipt would have corroborated Lewis' proposed testimony since counsel believed that was crucial to add credibility to the proposed alibi. Counsel indicated that had he been able to verify the authenticity of the receipt, he would have presented "a now very credible alibi defense." This begs the question: why didn't he attempt to obtain the

15

evidence before trial?   Counsel did nothing to verify Lewis' story that he was with Petitioner at the jewelry store from 4:45 until after 6:00 p.m.

A habeas petitioner is prejudiced by counsel's failure to call or investigate additional alibi witnesses to corroborate his or her alibi defense. *See Stewart v. Wolfenbarger,* 468 F.3d 338, 357-60 (6th Cir. 2006)*; Bigelow v. Williams,* 367 F. 3d 562, 575 (6th Cir. 2004)**;** *Clinkscale v. Carter*, 375 F.3d at 443.  Significantly, the Sixth Circuit rejected the idea that additional alibi witnesses are merely cumulative and therefore would not affect the outcome of the case. *Stewart,* 468 F. 3d at 358.

Petitioner was prejudiced by counsel's failure to present an alibi defense. Contrary to what the judge indicated on post-conviction review in denying the newly discovered evidence claim, the evidence against Petitioner was neither significant nor compelling.  Ricardo Sims was the only person who identified Petitioner as the shooter and this was only nine months after the shooting and only after Sims faced serious drug charges in federal court.  Ricardo Sims testified as part of a plea bargain, in hope of obtaining a lighter sentence.  There were no eyewitnesses against Petitioner; nor was there physical evidence linking him to the crime.

The "availability of willing alibi witnesses must also be considered in light of the otherwise flimsy evidence supporting [Petitioner's] conviction." *Avery v. Prelesnik*, 548 F.3d 434, 439 (6th Cir. 2008).  The "potential alibi witnesses coupled with an otherwise weak case" renders counsel's failure to adequately investigate and present an alibi defense "sufficient to 'undermine confidence' in the outcome of the jury verdict." *Id.*

16

Undisputed evidence indicates that Lewis would testify to the events set forth in his affidavit.   Murray could have provided additional corroboration of Lewis' testimony.

In light of the weakness of this case, counsel's failure to investigate and to present an alibi defense was ineffective, entitling Petitioner to a writ of habeas corpus. *Clinkscale v. Carter,* 375 F. 3d at 444-46.

The Court orders the State of Michigan to either (1) set a new trial date that is within ninety days of entry of this order, which is to be conducted in accordance with the conditions stated in this opinion, or (2) release Petitioner unconditionally. *See Mathis v. Berghuis,* 202 F. Supp. 2d 715, 725 (E.D. Mich. 2002).

Because this Court's conclusion that Petitioner is entitled to habeas relief on this claim is dispositive of the petition, it is unnecessary to review Petitioner's other claims. *See Satterlee v. Wolfenbarger,* 374 F. Supp. 2d 562, 567 (E.D. Mich. 2005); *aff'd,* 453 F. 3d 362 (6th Cir. 2006); *cert. den.,* 127 S. Ct 1832 (2007).

### III. ORDER

**Petitioner's application for writ of habeas corpus is conditionally granted. Unless the state takes action to give Petitioner a new trial within ninety (90) days of the date of this opinion, the State of Michigan must release him unconditionally from custody.**

**IT IS ORDERED**.

 /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

17

Dated:  September 4, 2015

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 4, 2015. |
| s/Linda Vertriest |
| Deputy Clerk |